UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPINE AND NEUROSURGERY INSTITUTE,<br><br>Plaintiff,<br><br>v.<br><br>BLUE CROSS OF CALIFORNIA,<br><br>Defendant. | Case No. 18-cv-04777-PJH<br><br>**ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE**<br><br>Re: Dkt. No. 21 |

Defendant Blue Cross of California's ("Blue Cross") motion to dismiss came on for hearing before this court on December 12, 2018. Plaintiff California Spine and Neurosurgery Institute dba San Jose Neurospine ("SJN" or "the Institute") appeared through its counsel, Richard Williams. Defendant appeared through its counsel, Mary Kate Kamka. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendant's motion, for the following reasons.

## BACKGROUND

SJN is a medical service provider that provided medical services to an individual, referred to by the parties as "HR." HR is a member of an employer-sponsored ERISA plan (the "Plan", located at Dkt. 21-2, Ex. A) administered by Blue Cross. SJN seeks payment from Blue Cross under the terms of the Plan for services it performed on HR. SJN's complaint against Blue Cross states a single cause of action under 29 U.S.C. §1132(a)(1)(B) for failure to pay ERISA plan benefits, and for attorneys' fees and costs under 29 U.S.C. § 1132(g)(1). Compl., Dkt. 1.

SJN provided surgery services to its patient HR on January 19, 2017.  Id. ¶ 10.

Prior to HR receiving treatment from SJN, HR assigned his ERISA Plan rights and

benefits to SJN in their entirety, designating that SJN stands in the shoes of HR to seek,

claim, and obtain anything that the member/patient would have been entitled to receive

under the applicable healthcare coverage administered and/or underwritten by Blue

Cross.  SJN attached a copy of that assignment agreement to the complaint.  Id. ¶ 12 &

Ex. B.

SJN alleges that as a general practice, prior to a patient's surgery, a SJN

representative would ordinarily speak to a representative of an underwriter or claim

administrator.  Those conversations would typically result in a claim administrator telling

SJN that a patient was covered by insurance, that SJN was an out-of-network provider,

and that the specific treatment SJN was calling about was covered and that the claim

administrator would pay some amount of the bill.  Id. ¶ 13.  After such calls, SJN would

ordinarily provide surgery.  Id. ¶¶ 13–14.  SJN has not alleged those ordinary practices

occurred specifically with respect to SJN's treatment of HR, although counsel

represented at the hearing that it may be able to do so in an amended complaint.

Defendant never told SJN during any of their phone calls that Blue Cross would

argue that HR could not assign benefits under their ERISA plan to SJN.  Id. ¶ 15.  If

defendant would have stated that it intended to rely upon an anti-assignment clause as a

basis to bar payment, SJN would not have performed surgery on HR.  Id.

SJN submitted its billing claim form to Blue Cross on or about February 2, 2017 in

the amount of $93,000.00.  Id. ¶ 10.  On August 14, 2017, Blue Cross processed and

paid the claim, but only in the amount of $2,095.34.  The Claim Status Detail report

prepared by Blue Cross showed that $1,396.89 was applied to patient co-insurance,

$601.15 was applied to patient deductible, and $88,906.62 of the billed amount was

deemed "non-covered" on the basis that it exceeded the maximum allowable amount.  Id.

¶¶ 11, 20.  On April 17, 2017, SJN appealed the decision with Blue Cross, but Blue Cross

did not respond.  Id. ¶ 21.

**DISCUSSION**

**A.  Legal Standard**

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, 349 F.3d 1191, 1199–1200 (9th Cir. 2003).  Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).  The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558–59 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment.  Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

Review is generally limited to the contents of the complaint, although the court can also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading."  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999)); see also Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007) ("a court can consider a document on which the

complaint relies if the document is central to the plaintiff's claim, and no party questions the authenticity of the document").  The court may also consider matters that are properly the subject of judicial notice (Lee v. City of L.A., 250 F.3d 668, 688–89 (9th Cir. 2001)), exhibits attached to the complaint (Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989)), and documents referenced extensively in the complaint and documents that form the basis of the plaintiff's claims (No. 84 Emp'r-Teamster Jt. Counsel Pension Tr. Fund v. Am. W. Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003)).

**B.    Analysis**

"ERISA's civil enforcement provisions specify which categories of individuals and entities may enforce each of the statute's protections." DB Healthcare, LLC v. Blue Cross Blue Shield of Arizona, Inc., 852 F.3d 868, 873 (9th Cir. 2017).  Cases discussing the ability to bring suit under the ERISA statute "often refer to the question as whether the plaintiff has 'standing' or 'statutory standing' to sue under ERISA." Id.  But "whether Congress has granted a private right of action to a particular plaintiff is *not* a jurisdictional requirement.  A dismissal for lack of statutory standing under ERISA is properly viewed as a dismissal for failure to state a claim rather than a dismissal for lack of subject matter jurisdiction." Id. (internal quotation marks omitted).

The ERISA statute does not by its terms establish the ability for a provider, like plaintiff, to bring claims for benefits on its own behalf. Id. at 874.  But as a general matter, "ERISA does not forbid assignment by a beneficiary of his right to reimbursement under a health care plan to the health care provider." Misic v. Bldg. Serv. Emps. Health and Welfare Tr., 789 F.2d 1374, 1377 (9th Cir. 1986).  "So a health care provider in appropriate circumstances *can* assert the claims of an ERISA participant or beneficiary." DB Healthcare, 852 F.3d at 876.  However, "ERISA welfare plan payments are not assignable in the face of an express non-assignment clause in the plan." Id. (quoting Davidowitz v. Delta Dental Plan of California, Inc., 946 F.2d 1476, 1481 (9th Cir. 1991)); Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc., 770 F.3d

1282, 1296 (9th Cir. 2014) ("Anti-assignment clauses in ERISA plans are valid and enforceable.").

The parties agree that the Plan contains an express anti-assignment provision. E.g., Opp., Dkt. 27 at 1, 5. Plaintiff argues that defendant (1) waived the anti-assignment clause and (2) is equitably estopped from enforcing it.

### 1. Whether Defendant Waived the Anti-Assignment Clause

An ERISA plan administrator who denies a claim from a "participant or beneficiary" must explain the "specific reasons for such denial[.]" 29 U.S.C. § 1133. The administrator must also give the claimant information about the denial, including the "specific plan provisions" on which it is based and "any additional material or information necessary for the claimant to perfect the claim." Harlick v. Blue Shield of California, 686 F.3d 699, 719 (9th Cir. 2012) (quoting 29 C.F.R. § 2560.503–1(g)). "A plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time when the denial is challenged in federal court." Id.; accord Spinedex, 770 F.3d at 1296 ("an administrator may not hold in reserve a known or reasonably knowable reason for denying a claim, and give that reason for the first time when the claimant challenges a benefits denial in court").

In short, a plan cannot describe the reasons it denied a claim in court for the first time. But Blue Cross did not deny SJN's claim because of the anti-assignment clause, or because HR attempted to assign his rights under the plan. The anti-assignment clause is a litigation defense raised by defendant—not a reason it denied SJN's claim.

Two unpublished Ninth Circuit opinions have recently agreed with that assessment.[1] An ERISA plan's "anti-assignment provision, however, is a litigation defense, not a substantive basis for claim denial. The Plan did not need to raise it during the claim administration process." Brand Tarzana Surgical Inst., Inc. v. Int'l Longshore & Warehouse Union-Pac. Mar. Ass'n Welfare Plan, 706 F. App'x 442, 443 (9th Cir. 2017);

---

[1] Although not precedential, the court considers the memorandum dispositions discussed herein persuasive authority.

Eden Surgical Ctr. v. Cognizant Tech. Sols. Corp., 720 F. App'x 862, 863 (9th Cir. 2018) ("Defendants raised the anti-assignment provision after the suit commenced to contest Eden's standing to sue, not as a reason to deny benefits.").  Under that reasoning, Blue Cross did not waive the legal defense that SJN cannot bring this ERISA claim due to the anti-assignment clause, even though it is raising that defense for the first time now.

Plaintiff argues that Brand Tarzana and Eden Surgical Center are in tension with previously-published, controlling Ninth Circuit authority.  Specifically, SJN argues that Spinedex compels a contrary outcome.  In Spinedex, the court held that an anti-assignment clause defense was not waived because "there is no evidence that [defendant] United was aware, or should have been aware, during the administrative process that [plaintiff] Spinedex was acting as its patients' assignee. . . .  Defendants therefore did not waive their objection to the assignment in the district court when it became clear, for the first time, that Spinedex was claiming as an assignee."  Spinedex, 770 F.3d at 1297.  The court reasoned that the defendant did not waive the defense because it did not know about the assignment.  The Spinedex court did not reach the issue that was later decided by Brand Tarzana and Eden Surgical Center—whether a Plan needs to raise an anti-assignment provision during the claim administration process at all to avoid waiving it as a litigation defense.

Plaintiff argues that Spinedex approvingly cited a Fifth Circuit opinion that found a plan was estopped from raising a non-assignment clause defense for the first time at trial, where the defendant never previously cited the anti-assignment clause during more than three years of claims processing.  See Hermann Hosp. v. MEBA Med. & Benefits Plan, 959 F.2d 569, 574 (5th Cir. 1992), overruled on other grounds by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co., 698 F.3d 229 (5th Cir. 2012).  The Spinedex opinion also cited Harlick for the general proposition that "ERISA and its implementing regulations are undermined where plan administrators have available sufficient information to assert a basis for denial of benefits, but choose to hold that basis in reserve rather than communicate it to the beneficiary."  Spinedex, 770 F.3d at 1297.

6

The court appreciates that plaintiff has adopted a plausible—if expansive—reading of Spinedex that would put it in tension with Brand Tarzana and Eden Surgical Center. However, this court declines to read Spinedex so expansively. Plaintiff's reading would overextend Spinedex's holding to reach beyond the factual scenario that court considered, and it would read the opinion's efforts to distinguish Hermann Hospital as a broad adoption of Fifth Circuit precedent. Instead, this court reads Spinedex in concert with the subsequent Ninth Circuit decisions that are directly on point with the issue presented here. In doing so, the court notes that all three opinions rely on Harlick; Brand Tarzana itself relies on Spinedex; and Judge Bybee sat on the panels that decided both Spinedex in 2014 and Eden Surgical Center less than four years later. This court—like the three opinions themselves and Judge Bybee—reads their holdings harmoniously. This conclusion cannot be overcome by an amended pleading.

### 2. Whether Defendant is Estopped from Enforcing the Anti-Assignment Clause

The remedy of equitable estoppel holds the promisor to what it had promised and "operates to place the person entitled to its benefit in the same position he would have been in had the representations been true." Gabriel v. Alaska Elec. Pension Fund, 773 F.3d 945, 955 (9th Cir. 2014). Under the theory of equitable estoppel "(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." Id. (quoting Greany v. W. Farm Bureau Life Ins. Co., 973 F.2d 812, 821 (9th Cir. 1992)).

"[T]o maintain a federal equitable estoppel claim in the ERISA context, the party asserting estoppel must not only meet the traditional equitable estoppel requirements, but must also allege: [5] extraordinary circumstances; [6] that the provisions of the plan at issue were ambiguous such that reasonable persons could disagree as to their meaning or effect; and [7] that the representations made about the plan were an interpretation of

7

the plan, not an amendment or modification of the plan." Id. at 957 (internal quotation marks omitted).

Plaintiff alleges that defendant affirmed in advance that SJN was eligible to receive Plan benefits and would be paid for its services (Compl. ¶¶ 13(e) & 14), and that defendant failed to disclose the Plan's anti-assignment clause (Compl. ¶ 15). See also Opp. at 14. The court assumes without deciding that such allegations could support an estoppel argument and turns to the Gabriel factors. Plaintiff must meet each factor. Here, plaintiff critically fails the third, sixth, and seventh factors.

The third factor requires that "the [plaintiff] must be ignorant of the true facts." Gabriel, 773 F.3d at 955. If plaintiff were in fact an assignee as it alleges, it would have had the Plan documents available to it. It would have known about the anti-assignment provision. Eden Surgical Ctr., 720 F. App'x at 863 ("Eden could have—and should have—attempted to obtain the plan documents from the purported assignor to verify whether the plan contained an anti-assignment provision, if knowledge of that fact was indeed critical to its decision").

The sixth factor requires that "the provisions of the plan at issue were ambiguous such that reasonable persons could disagree as to their meaning or effect." Gabriel, 773 F.3d at 957. The anti-assignment provision at issue is indisputably clear. See Plan at 99 ("No Assignment[:] No benefit under the plan may be voluntarily or involuntarily assigned or alienated.").

The seventh factor requires that "the representations made about the plan were an interpretation of the plan, not an amendment or modification of the plan." Gabriel, 773 F.3d at 957. "Accordingly, a plaintiff may not bring an equitable estoppel claim that would result in a payment of benefits that would be inconsistent with the written plan, or would, as a practical matter, result in an amendment or modification of a plan, because such a result would contradict the writing and amendment requirements" of the ERISA statute. Id. at 956 (internal quotation marks omitted). "For the same reason, oral agreements or modifications cannot be used to contradict or supersede the written terms of an ERISA

8

plan." Id. (internal quotation marks omitted).  The plan terms are clear, and plaintiff's equitable estoppel argument relies on the court finding that defendant made an oral modification to the Plan allowing assignment.

Plaintiff's inability to meet each of the third, sixth, and seventh <u>Gabriel</u> factors is alone fatal to plaintiff's estoppel argument.  Moreover, plaintiff cannot cure its failure to meet any of the three factors by amendment.  Plaintiff fails the third factor because it was an assignee of the Plan, which is itself the essential basis of its ability to bring this action. Plaintiff fails the sixth and seventh factors due to the very language of the Plan.

## CONCLUSION

For the foregoing reasons, the court finds that the Plan's anti-assignment provision warrants dismissal of this action.  The court finds that defendant did not waive the anti-assignment provision, nor can it be equitably estopped from enforcing it.  Because plaintiff cannot cure the pleading's deficiencies by amendment, the case is DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated:  January 7, 2019

_____

PHYLLIS J. HAMILTON
United States District Judge